IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GARY E. ROBERTS,<br><br>        Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of the Social<br>Security Administration,[1]<br><br>        Defendant. | Case No. CIV-20-91-SPS |

## OPINION AND ORDER

The claimant Gary E. Roberts requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of hisr past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty years old at the time of the administrative hearing (Tr. 36, 163). He completed high school and has worked as a welder and general farm worker (Tr. 28, 188). The claimant alleges that he has been unable to work since his application date of April 12, 2017, due to a missing right eye, depression, and diabetes (Tr. 187).

## Procedural History

On April 12, 2017, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Jana Kindake conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 16, 2019 (Tr. 15-29). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform the lifting requirements of light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds occasionally, but that he could stand/walk not more than four hours in an eight-hour workday and sit six hours in an eight-hour workday,

with normal breaks.  Additionally, she found he could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and he could only have frequent near visual acuity, far visual acuity, and depth perception.  Furthermore, he could never climb ladders/ropes/scaffolds, have no exposure to extremes of heat or hazards such as unprotected heights or moving machinery, and he could not operate a motor vehicle.  Finally, she found he was limited mentally to performing simple, routine tasks and simple decision-making in an environment that involves few, if any, workplace changes, and he could only occasionally interact with coworkers, supervisors, and the public (Tr. 23).  The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, electronic worker, garment bagger, and garment sorter (Tr. 28-29).

## Review

The claimant contends that the ALJ erred by:  (i) failing to properly account for the state reviewing physician opinions in the record, both physical and mental, which affected the jobs he could perform, and (ii) improperly evaluating the consistency of his statements.  The Court agrees with the claimant's first contention as it relates to the claimant's physical impairments, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant had the severe impairments of bursitis of the knee, type II diabetes, status post loss of right eye due to a perforated corneal ulcer, peripheral neuropathy, depression, and anxiety (Tr. 17).  The relevant medical records as to the claimant's physical impairments reflect that the claimant lost the use of his right eye in December 2015 (Tr. 281).

On September 26, 2017, Dr. Terry Kilgore, M.D., conducted a history and physical evaluation of the claimant.  Upon exam, Dr. Kilgore noted the claimant's loss of his right eye, as well as the claimant's own reports that he could read and watch television, but that he had some blurred vision in the left eye (Tr. 488).  His visual acuity in the left eye was 20/40 (Tr. 489-490).  He further noted some pain with movement and limited range of motion (Tr. 491-494).

State reviewing physician Michael Young found the claimant could perform medium work with no postural or manipulative limitations, but that he had limited near acuity, far acuity, depth perception, accommodation, color vision, and field of vision as to the right eye (Tr. 85).  Dr. Young further noted that the claimant should avoid jobs that require good visual acuity in both eyes due to the loss of his right eye, and that he should also avoid hazards (Tr. 86).  Upon review, Dr. Sterling Moore, M.D., found the claimant could perform light work with some manipulative limitations, as well as the same visual limitations identified by Dr. Young, including the notation that the claimant should avoid jobs that require good visual acuity in both eyes (Tr. 105-106).

At the administrative hearing, the ALJ elicited testimony from a VE to determine if there were jobs a hypothetical person could perform with the following limitations:

> . . . limited to the light exertional level as that term is defined in the regulations but standing and/or walking would be limited to no more than four hours in an eight-hour workday with normal breaks.  The person could occasionally climb ramps and stairs but could never climb ladders, ropes, or scaffolds.  The person could occasionally balance, stoop, kneel, crouch, and crawl.  Near visual acuity, far visual acuity and depth perception would be limited to frequent.  Handling and fingering would be limited to frequent.  The person would need to avoid exposure to extremes of heat and to hazards such as unprotected heights and unguarded moving machinery.  And would

> be restricted from operation of a motor vehicle. The person would be limited mentally to performing simple routine tasks and simple decision-making in an environment that involves few, if any workplace changes. Interaction with supervisors, coworkers and the public would be limited to occasional.

(Tr. 60-61). The VE identified that the claimant could not perform his past relevant work, but that he could perform the jobs of electronics worker, DICOT § 726.687-010; garment bagger, DICOT § 920.687-018; and garment sorter, DICOT § 222.687-014 (Tr. 61). The VE further testified that if the claimant were limited to sedentary work, all jobs would be eliminated (Tr. 62).

In her written opinion, the ALJ summarized the claimant's hearing testimony and the medical evidence in the record. As relevant here, she noted at step four that the claimant's loss of right eye supported his allegations of depth perception problems, and the limitation to frequent near and far visual acuity and depth perception, as well as limitations related to hazards (Tr. 24). She found Dr. Kilgore's opinion and Dr. Moore's opinion persuasive, noting specifically that Dr. Moore's reviewing opinion, *i. e.*, that he could perform light work with additional limitations, was supported by Dr. Kilgore's consultative opinion, as well as the claimant's treatment history and reported daily activities (Tr. 27). She found Dr. Young's opinion, *i. e.*, that the claimant could perform medium work, unpersuasive because it was inconsistent with Dr. Kilgore's findings of decreased sensation and weakness in his bilateral upper and lower extremities (Tr. 27). The ALJ made no mention of Dr. Young and Dr. Moore's statements regarding limitations of field of vision, color vision, and accommodation, although she acknowledged that Dr. Moore had included

a limitation of avoiding jobs requiring good use of bilateral visual acuity (Tr. 27). The ALJ ultimately concluded that the claimant was not disabled. (Tr. 28-29).

The claimant argues that the ALJ failed to properly assess the medical opinions in the record including, *inter alia*, *both* Dr. Young and Dr. Moore's opinions. Specifically, he contends that the ALJ failed to account for all of the limitations related to his visual impairments as set forth in their RFC assessments. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ

finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  Here, the ALJ referred to persuasive and consistency, and *appeared* to adopt the visual limitations suggested by Dr. Moore *and* Dr. Young by noting limitations to frequent near visual acuity, far visual acuity, and depth perception.  However, her assessment and assigned RFC limitations do not address the total lack of vision in the claimant's right eye, nor of the additional limitations the state reviewing physicians included related to color vision and field of vision.  It was error for the ALJ to minimize and/or ignore the evidence in this way.  *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]; *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].

The claimant further contends that the error in accounting for the opinions of Dr. Moore and Dr. Young caused a reversible error with the jobs identified by the ALJ at step five. The Court agrees. At the administrative hearing, the VE identified the jobs of electronics worker, DICOT § 726.687-010; garment bagger, DICOT § 920.687-018; and garment sorter, DICOT § 222.687-014. The job of electronics worker requires frequent near acuity and occasional depth perception, color vision, and accommodation, although far acuity and field of vision are not present. *See* DICOT § 726.687-010. The job of garment bagger requires that color vision be present occasionally, although the other visual requirements are not present. *See* DICOT § 920.687-018. The job of garment sorter requires frequent near acuity and accommodation, as well as occasional color vision, although far acuity, depth perception, and field of vision are not present. *See* DICOT § 222.687-014. None of the job requirements state that vision is only required in one eye and the ALJ's hypothetical made no mention of the claimant's loss of vision in the right eye, nor of limitations related to field of vision and color vision. The jobs identified thus do not account for *all* of the claimant's limitations.

The Commissioner contends that the VE's testimony and the ALJ's findings are substantial here because the claimant had 20/40 vision in his remaining left eye. But the VE's testimony *did not* explain how the elimination of vision in one eye impacted her testimony; they did not discuss the claimant's loss of vision in the right eye at all (Tr. 60-63). This was error. *See Harless v. Saul*, 2020 WL 1330436, at *4 (W.D. Okla. March 23, 2020) ("Rather, the VE relied upon the DOT's job descriptions but offered no explanation as to how the significant modification of eliminating Plaintiff's ability to see on one side

impacted her testimony or would affect Plaintiff's ability to fulfill the visual abilities required for the cited occupations."). See also *Cloud v. Astrue*, 2011 WL 4478651, at *3 (E.D. Okla. Aug. 29, 2011) (finding jobs requiring frequent use of visual acuity and/or depth perception should be eliminated for a claimant who is legally blind in one eye). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999). See also *Krueger v. Astrue,* 337 Fed. Appx. 758, 760–762 (10th Cir. 2009) (reversing and remanding in part because the ALJ failed to resolve a conflict between VE's testimony and DOT job descriptions); *Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"); *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. The ALJ did neither in this case.

Although the unresolved conflict as to the claimant's visual limitations would have been harmless error if the ALJ had identified in her opinion other jobs that did not pose a conflict, it is not harmless here because the three jobs identified all had visual requirements conflicting with the evidence in the record pertaining to the claimant's visual impairments. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on

whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country."). For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 22ⁿᵈ day of September, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**